IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TYRONNE BATTLE,

    Plaintiff,                      No. CIV S-01-2344 GEB DAD P

    vs.

V. SANCHEZ, et al.,

    Defendants.                FINDINGS AND RECOMMENDATIONS

         Plaintiff is a state prisoner proceeding pro se with this civil rights action. Defendants Sanchez and Bonaccorso are retired state employees. The case is before the court on these defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has not filed opposition to defendants' motion despite multiple court orders requiring him to do so.

BACKGROUND

         The court received plaintiff's civil rights complaint on November 2, 2001. The Clerk of the Court filed the complaint in <u>Tyronne Battle v. V. Sanchez, et al.</u>, case No. CIV S-00-1442 FCD JFM P, a case that had been dismissed without prejudice on October 9, 2001, for failure to exhaust administrative remedies prior to bringing suit. On December 21, 2001, it was determined that a new civil rights action should be opened for the complaint filed on November

1

2, 2001. Accordingly, plaintiff's complaint was removed from the closed case and filed in new case No. CIV S-01-2344 GEB DAD P.

Plaintiff complied with the court's January 4, 2002 order directing him to pay the filing fee or submit an in forma pauperis application. Plaintiff also complied with the court's February 14, 2002 order requiring him to submit a signed copy of his complaint. On March 6, 2002, the court screened plaintiff's complaint, determined that the pleading states cognizable claims, and authorized service of the complaint on the four named defendants: V. Sanchez, S. Bonaccorso, A. Thompson, and C/O Gomez.

On August 16, 2002, all defendants joined in a motion to dismiss plaintiff's complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. The undersigned recommended that the motion be granted with regard to plaintiff's claims against defendants Thompson and Gomez, as well as all claims under 42 U.S.C. § 1985, and that the motion be denied with regard to plaintiff's claims of retaliation and property deprivation against defendants Sanchez and Bonaccorso. The findings and recommendations were adopted in full on February 18, 2003. Defendants Sanchez and Bonaccorso filed their answer to the complaint on March 4, 2003.

By a scheduling order filed August 18, 2003, the court set a discovery deadline of December 19, 2003, a pretrial motion deadline of February 13, 2004, pretrial conference on June 11, 2004, and jury trial on August 31, 2004. On February 6, 2004, one week prior to the deadline for filing dispositive motions, defendants filed a motion for the sanction of dismissal grounded on plaintiff's refusal to answer questions at his deposition on December 19, 2003, the day on which all discovery was to be completed. The undersigned recommended that the motion for dismissal be denied because defendants' proper remedy was to seek a court order requiring plaintiff to testify, and the deadline for seeking such an order expired on December 19, 2003. The findings and recommendations were adopted in full on March 22, 2004.

/////

On May 26, 2004, the court received plaintiff's timely but defective pretrial statement. On June 4, 2004, the due date for defendants' pretrial statement, defendants lodged a request for a thirty-day extension of time to file their pretrial statement. Shortly thereafter plaintiff filed an untimely supplement to his pretrial statement together with a motion for an extension of time to file an unspecified pretrial motion. The parties' filings demonstrated that the parties would not be ready for trial on August 31, 2004. By order filed June 18, 2004, the court directed plaintiff to file an amended pretrial statement, set a new date for defendants' pretrial statement, continued the pretrial conference to September 10, 2004, set a trial confirmation hearing for December 17, 2004, and continued trial to January 17, 2005.

One week after new dates were set, defendants filed a belated request for leave to file a motion for summary judgment and lodged a proposed motion for summary judgment. Plaintiff filed a second timely but defective pretrial statement, a motion for attendance of incarcerated witnesses at trial, and an objection to defendants' request for leave to file a motion for summary judgment. In light of the inadequacies of plaintiff's pretrial statements, the court granted defendants' request on August 31, 2004, directed the Clerk to file the proposed motion, and ordered plaintiff to file opposition to the motion within thirty days. All dates were vacated.

Plaintiff did not file timely opposition to defendants' motion and did not request an extension of time to do so. By order filed October 13, 2004, the court granted plaintiff an additional thirty days to file his opposition. No document has been filed in this action since October 13, 2004, with the exception of a recent notice of reassignment of counsel for defendants.

PLAINTIFF'S CLAIMS

Plaintiff alleges that defendants Sanchez and Bonaccorso searched his cell outside his presence on June 21, 2000, and that numerous items of personal property were taken. Plaintiff further alleges that defendants Sanchez and Bonaccorso took his property in retaliation for a lawsuit plaintiff had filed against defendant Bonaccorso.

At screening, the court found that the pro se pleading describes an intentional deprivation of property carried out pursuant to established state procedures and asserts that the motivation for the deprivation was retaliation against plaintiff for exercising a constitutional right. After defendants filed their motion to dismiss, the court reviewed the complaint pursuant to the standards applicable to Rule 12(b) motions and found again that plaintiff's pro se complaint states claims concerning property deprivation, due process violations, and retaliation.

## STANDARDS FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

Summary judgment is appropriate when it is demonstrated by a party that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party may seek summary judgment upon all or any part of another party's claim. Id.

> The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. Summary judgment should be granted "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits and/or admissible discovery material in support of the contention that a dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The party opposing summary judgment must show that any fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). In trying to establish the existence of a factual dispute, the party opposing summary judgment need not establish a material issue of fact conclusively in his or her favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

The evidence of the party opposing summary judgment is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the party opposing summary judgment. Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587. Inferences will not be drawn out of the air, however; it is the opposing party's obligation to produce a factual predicate from which an inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than simply show that there is some

metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

By order filed March 25, 2002, plaintiff was advised of the requirements for opposing a summary judgment motion pursuant to Rule 56.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

## DEFENDANTS' EVIDENCE AND ARGUMENTS

Defendants seek summary judgment on the grounds that (1) the facts do not support plaintiff's retaliation claim and (2) both defendants are entitled to qualified immunity. Defendants offer a detailed statement of undisputed facts supported by the declarations of defendant Sanchez, defendant Bonaccorso, and Correctional Officer M. Gomez.  Attached to the declarations are photographs and documents, including a cell search form for the relevant date and plaintiff's property inventory records.

Defendants' evidence establishes the following facts:  plaintiff is a wheelchair-bound state prisoner who is housed at the California Medical Facility; on June 21, 2000, plaintiff lived in a hospital dorm room in the G-1 hospital of Unit 1; at that time, defendant Bonaccorso was facility captain and defendant Sanchez was facility lieutenant for Unit 1; Bonaccorso was responsible for the overall safety and security of the unit and routinely made rounds to examine the inmates' living quarters; state regulations require that the combined volume of an inmate's state-issued and allowable personal property items in a cell or dorm room shall not exceed six cubic feet; state regulations authorize routine searches of prison cells, rooms, and dormitory areas to assess whether excess property or contraband, i.e., unauthorized or altered items, pose a threat to institutional safety, security, order, sanitation, or health; inmates do not have a right to be present during routine, general searches of a cell or dorm room when staff are not searching for a particular item; plaintiff lived in a closed medical wing akin to a convalescent hospital; ensuring that hospital living areas are clean and free of excess property and contraband is important to

maintaining a clean, sanitary, and secure atmosphere; on June 21, 2000, while making her rounds, Bonaccorso determined that plaintiff's dorm area had excessive property, including excess food, was very messy, and was not sanitary; since plaintiff's dorm area did not appear to comply with regulations that require cleanliness and limit personal property to six cubic feet, Bonaccorso initiated a search of plaintiff's dorm area by notifying facility lieutenant Sanchez that she believed plaintiff's dorm area needed to be searched for excessive property and contraband; Sanchez concurred; Bonaccorso and Sanchez entered plaintiff's dorm area, and Bonaccorso notified plaintiff that staff would be searching his area; Bonaccorso assigned two correctional officers whom she believed were very knowledgeable regarding property issues to assist her; one of the officers was Correctional Officer M. Gomez, who was a search and escort officer for the central office at CMF but had worked with Bonaccorso in the past; Bonaccorso asked Gomez to do the search because she knew he did cell searches thoroughly, fairly, and "by the book"; Bonaccorso explained to Gomez that plaintiff had contraband and property in excess of six cubic feet, that his living area posed a health, safety, and sanitation hazard, and that the area needed to be searched; in accordance with Bonaccorso's instructions, Gomez and another officer obtained plaintiff's property inventory list and methodically went through plaintiff's belongings to confiscate items he did not have permission to have and to throw away trash; the two officers were authorized to determine what property was excess property or contraband; items that plaintiff was allowed to possess were left behind by the officers; the officers spent approximately two hours searching plaintiff's dorm area; photographs of plaintiff's living area and the confiscated property show that plaintiff had a large amount of property and that his living area was messy; the officers removed three to four bags of trash from plaintiff's living area; before any item was removed, the officers verified whether the item was on plaintiff's property inventory; the officers filled out a standard cell search form for their search; plaintiff was present at the beginning of the search; after plaintiff became unruly, correctional staff wheeled him in his wheelchair into the shower so that the search could be concluded; during the search, Bonaccorso

came and went, monitoring the officers' progress; Bonaccorso approved all items taken from plaintiff's living area and verified that they were not authorized items or exceeded the space limit; the search was routine and was done because plaintiff had excess property and contraband in his area; Sanchez scanned the confiscated items but did not itemize them herself and was not involved in deciding which items would stay and which would be taken; Sanchez did not observe the entire search but entered and exited the area a few times and observed the officers searching and inventorying plaintiff's belongings; Sanchez did not actively participate in the search; at the time of the search, Sanchez was aware of several lawsuits that inmates had filed against her over the years, but she was not specifically aware of or concerned about case No. 98-2086 FCD DAD P; at the time of the search, defendant Bonaccorso and Correctional Officer Gomez were not aware of the lawsuit against defendant Sanchez; Bonaccorso initiated the search of plaintiff's hospital area to promote a clean, safe, and orderly hospital environment, as she was required to do under prison regulations.

Defendants contend that their evidence proves that the search of plaintiff's living area furthered the legitimate penological objectives of maintaining an orderly, sanitary, and safe hospital environment and that the search was not done in retaliation for a 1998 lawsuit plaintiff had filed against defendant Sanchez. Defendants argue that there is no evidence that retaliation for constitutionally protected conduct was a motivating factor, much less a substantial factor or the sole motivating factor, for their actions.

Defendants contend that they are entitled to qualified immunity because both of them could reasonably have believed it was lawful to search plaintiff's cell and confiscate excess property and contraband. Defendants point to the evidence that defendant Bonaccorso followed prison regulations closely and assigned the search task to officers who were experienced, thorough, and meticulous, while defendant Sanchez was merely an observer rather than an active participant in the search.

/////

PLAINTIFF'S EVIDENCE AND ARGUMENTS

Because plaintiff has refused to file opposition to defendants' motion, the court deems his pretrial statements to be his opposition to the motion.

Plaintiff's first pretrial statement identifies these undisputed facts: (1) plaintiff is a 59 year old paraplegic and diabetic inmate in the custody of the California Department of Corrections; (2) on June 21, 2000, the defendants came to plaintiff's dorm, had plaintiff locked in the shower, "proceeded to tear [plaintiff's] area apart and left it that way, and took all of the property listed in plaintiff's complaint." (Pl.'s May 26, 2004 Pretrial Statement at 1-2.) Plaintiff identifies one disputed factual issue: "Why Capt. Bonaccorso was not around to answer my Appeal when it was sent to her in a Timely Fashion." (Id. at 2.) The sole relief sought is "Return of property taken or replacement." (Id.) Plaintiff states that he "brings this action before the court because defendant's [sic] maliciously and flagrantly locked plaintiff in the shower and illegally took plaintiffs [sic] property under Color of State Law, " in violation of two state regulations. Plaintiff states that § 3287(3) of Title 15 of the California Code of Regulations provides that an inmate should be permitted to observe a search when it is reasonably possible and safe to do so and the search has been initiated because the inmate is suspected of having a specific item or items of contraband in his or her property or quarters. Plaintiff states that § 3193 provides that the CDC accepts liability for the loss or destruction of inmate personal property when it is established that such loss or destruction results from employee negligence. Plaintiff asserts that his property was taken due to defendants' "intentional negligence." Plaintiff cites no authority regarding retaliation and no authority regarding federal constitutional rights related to property or due process. (Id. at 2-3.)

The court instructed plaintiff to file a new pretrial statement setting forth the undisputed facts and disputed factual issues concerning his federal constitutional claims of retaliation and property deprivation. Plaintiff was cautioned that failure to set forth undisputed facts and disputed factual issues with regard to either claim will result in a determination that the

9

claim has been abandoned. Plaintiff was also advised that his amended pretrial statement must include points and authorities demonstrating that he intends to prove a violation of federal constitutional rights. Plaintiff was cautioned that failure to cite such authorities for either claim will result in a determination that the constitutional claim has been abandoned. Plaintiff was advised that, if no federal constitutional issue remains to be decided, the undersigned will recommend that this action be dismissed. (Order filed June 18, 2004, at 3.)

In his amended pretrial statement, plaintiff asserts the same undisputed facts: (1) he is a 59 year-old paraplegic and diabetic inmate in the custody of the California Department of Corrections; (2) on June 21, 2000, the defendants came to plaintiff's dorm, had plaintiff locked in the shower, and "proceeded to tear [plaintiff's] bed and locker area apart and left it that way, and took all of the property listed in plaintiff's complaint." (Pl.'s July 22, 2004 Am. Pretrial Statement at 1-2.) Plaintiff identifies the disputed factual issue previously identified and adds a disputed evidentiary issue: "Why Capt. Bonaccorso was not around to answer my appeal when it was sent to her in a timely fashion" and "Whether or not Plaintiff was locked in the shower, and what was taken from plaintiff." (Id. at 2.)

In his amended points of law, plaintiff cites the state regulations previously cited, again to show that defendants "maliciously and flagrantly locked plaintiff in the shower and illegally took plaintiff's property. (Id. at 2.) Plaintiff adds that it was the defendants' intent to take his property and dispose of it so that he could not get it back. Plaintiff asserts that defendants "have violated plaintiff's Due Process and Equal Protection rights" and "illegally deprived plaintiff of his Personal Property." Plaintiff cites four federal cases regarding the pleading requirements for stating a cause of action for property deprivation under § 1983 as well as one Supreme Court case and two treatises regarding deprivation of property interests, the defense of good faith, and the vicarious liability of a superior for a subordinate's acts. (Id. at 2-3.) The only relief sought is return of property taken or replacement. (Id. at 2.)

/////

ANALYSIS

I. Plaintiff's Retaliation Claim

Prisoners may not be retaliated against for exercising their right of access to the courts. Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995). In order to prevail on a claim of retaliation, a prisoner must prove facts demonstrating that he was retaliated against for exercising a constitutional right and that the retaliation was a substantial or motivating factor for each defendant's acts or conduct. Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 285-87 (1977); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314-16 (9th Cir. 1989). A prisoner must also prove that each defendant's retaliatory acts did not advance legitimate penological goals. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995); Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

Defendants' evidence shows that it was defendant Bonaccorso who initiated the search of plaintiff's dorm area, and she was unaware of plaintiff's 1998 lawsuit against defendant Sanchez. Defendant Sanchez was generally aware of several lawsuits brought against her over the years but had no specific recollection of plaintiff's 1998 lawsuit against her when she concurred with defendant Bonaccorso's decision to search plaintiff's living area. It does not appear that there is a genuine issue as to any material fact concerning defendants' motivation for the June 21, 2000 search. The burden then shifts to plaintiff.

Plaintiff's pretrial statements do not mention retaliation and do not set forth any undisputed fact, any disputed factual issue, any relief sought, or any point of law pertaining to retaliation. In light of defendants' evidence and plaintiff's abandonment of his retaliation claim, the undersigned finds that the defendants are entitled to summary judgment on this claim.

II. Plaintiff's Property Deprivation and Due Process Claim

A prisoner may not be deprived of a protected property interest without due process. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Protected property interests are "created and their dimensions are defined by existing rules or understandings that stem from an

11

independent source, such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). The scope of a property interest is defined by state law. Id.; Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316-17 (9th Cir. 1989). The process due generally includes notice of intended deprivation and an opportunity to oppose it. Mathews v. Eldridge, 424 U.S. 319, 348-49 (1976); Jordan v. City of Lake Oswego, 734 F.2d 1374, 1376 (9th Cir. 1984).

"[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to . . . property." Daniels v. Williams, 474 U.S. 327, 328 (1986). In addition, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). In California, such a remedy is available in the form of a tort claim against public officials pursuant to California Government Code § 900, et seq. See City of West Covina v. Perkins, 525 U.S. 234, 240 (1999). Because the State of California provides a meaningful postdeprivation remedy for a property deprivation that was negligent or unauthorized, the allegation of a negligent deprivation of property or an unauthorized deprivation of property fails to state a claim upon which relief can be granted. A postdeprivation remedy may not satisfy due process "where the property deprivation is effected pursuant to an established state procedure." Hudson, 468 U.S. at 534. An authorized, intentional deprivation of property by a public official may constitute an actionable violation of the Due Process Clause. Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982).

Defendants have shown that plaintiff's personal property exceeded the six-cubic-feet limit and that his living area in the hospital dorm was messy. The evidence demonstrates that a routine search was conducted on June 21, 2000, for the purpose of removing contraband and excess property in accordance with state regulations and for legitimate penological reasons. The two correctional officers who performed the search were knowledgeable and experienced,


and defendant Bonaccorso authorized the officers to determine what property was contraband or excessive. The officers obtained plaintiff's property inventory list and methodically went through plaintiff's belongings to determine which items were on his list. All items that plaintiff was allowed to have were left behind. The officers confiscated items plaintiff did not have permission to have and threw away three or four bags of trash. Before any item was removed, the officers verified that the item was not on plaintiff's property inventory. The officers completed a standard cell search form. During the two hours that the officers were conducting the search, defendant Bonaccorso monitored their progress and approved the items that were removed after she verified that the items were not authorized or exceeded the space limit. Defendant Sanchez also scanned the confiscated items.

The scope of plaintiff's protected property interest is defined by § 3190 of Title 15 of the California Code of Regulations. This regulation requires wardens to maintain a list of personal property items and the maximum amount of such items an inmate may have in his possession within the institution. Cal. Code Regs. tit. 15, § 3190(a). The regulation also requires institutions to permit inmates to possess state property items issued to them and personal property items that present no threat to institution security or the safety of persons. Id. "The combined volume of state-issued and allowable personal property items shall not exceed six cubic feet," and an inmate is limited to any two of the following items: one television receiver, one musical instrument, one radio, one recorded tape/disk playback unit, and one typewriter. Cal. Code Regs. tit. 15, § 3190(b). As defined by this regulation, an inmate does not have a protected property interest in items not on his personal property list, in more than two of the items listed in § 3190(b), in contraband, or in property that exceeds the limit of six cubic feet.

Defendants have met their burden of demonstrating that plaintiff was not deprived of a protected property interest without due process. The burden then shifts to plaintiff. Plaintiff has not disputed that his combined volume of state-issued and allowable personal property exceeded six cubic feet on June 21, 2000. Nor has he disputed that the two correctional officers

removed three or four bags of trash and confiscated such property as two hot pots that had been altered, a cane for which plaintiff had no chrono, numerous items that were not on plaintiff's personal property list, and excessive amounts of state-issued clothing, medical supplies, and electrical cables and jacks. Plaintiff has offered no evidence that he was entitled to possess any specific item that was taken from him of June 21, 2000.

In his pretrial statements, plaintiff appears to claim he had a right under state law to be present during the search. Plaintiff's reliance on § 3287 of Title 15 of the California Code of Regulations is misplaced. The regulation merely provides that the inmate should be permitted to observe the search when it is a special inspection or when the search was initiated because the inmate is suspected of having a specific item or items of contraband in his property or quarters. Defendants' evidence shows that the search conducted on June 21, 2000, was not a special inspection and was not initiated because plaintiff was suspected of having a specific item or items of contraband in his property or quarters. Moreover, the regulation provides that the inmate should be permitted to observe the search only when it is reasonably possible and safe to do so. Defendants' evidence shows that plaintiff was permitted to be present until he interfered with the search by becoming unruly, thereby rendering it unsafe and not reasonably possible for him to be present. In any event, inmates have no federal constitutional right to the particular procedures established by state law. See Toussaint v. McCarthy, 801 F.2d 1080, 1096-97 (9th Cir. 1986). For these reasons, plaintiff has no federal claim arising from the fact that he was not allowed to be present throughout the search of his cell.

Plaintiff's pretrial statements also appear to assert a general due process violation arising from defendants' "intentional negligence" and lack of good faith. To the extent that plaintiff was deprived of any item of property due to the negligence of either defendant or due to an unauthorized intentional act of either defendant, such a deprivation did not violate the requirements of the Due Process Clause because a meaningful postdeprivation remedy was available to plaintiff in the form of a state tort claim. To the extent that plaintiff argues lack of

good faith, defendants' evidence supports a conclusion that each defendant had a good faith belief that it was lawful to search plaintiff's cell for the purpose of removing excess property and contraband.

In light of defendants' evidence and plaintiff's failure to offer any admissible evidence that establishes the existence of a genuine issue as to any material fact, the undersigned finds that the defendants are entitled to summary judgment on plaintiff's property deprivation and due process claim.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' August 31, 2004 motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure be granted on all remaining claims; and

2. This action be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 11, 2005.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:13
batt2344.msj